IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

WILLIAM WATSON #303-302
          Petitioner          :

  v.                                     :   CIVIL ACTION NO. AW-04-3463

ROBERT KUPEC, et al.,              :
          Respondent

## MEMORANDUM

Now before the Court is a habeas corpus Petition filed by William Watson (Paper No. 1); the State's Answer (Paper No. 11); and Petitioner's reply thereto.[1] (Paper Nos. 19, 29 and 30). After review of these papers, the Court finds no need for an evidentiary hearing. *See* Rule 8(a), *Rules Governing Section 2254 Cases in the United States District Courts.* For the reasons that follow, the Petition will be denied.

## Procedural History

Plaintiff was charged in the Circuit Court for Wicomico County with multiple offenses arising from two separate robberies. (Paper No. 11, Exhibit 1). On March 30, 2001, a jury convicted Petitioner of all charged submitted. Petitioner was sentenced on July 20, 2001, to a total prison term of 49 years. (*Id.*, Exhibit 6).

On appeal, Petitioner raised four issues, including whether: the trial court erred in denying his motion to sever charges; the trial court erred in allowing the State to introduce "other crimes" evidence; the evidence was insufficient to support the convictions; and the trial court erred in failing to merge his convictions. (*Id.*, Exhibit 7 at 2). On May 8, 2002, the Maryland Court of Special Appeals in an unreported opinion ordered the sentences for wearing, carrying, or transporting a

---

[1] Pursuant to the dictates of *Thompson v. Greene*, 427 F.3d 263 (4th Cir. 2005), Respondents provided Petitioner with a copy of all exhibits in this case. (Paper Nos. 17 and 22)

handgun be merged into the sentences for using a handgun in the commission of a violent crime, but otherwise affirmed the convictions. (*Id*., Exhibit 9).[2] Petitioner sought further review in the Maryland Court of Appeals, again raising his claims concerning trial court error in denying the motion to sever the charges and trial court error in allowing the state to introduce "other crimes" evidence. Additionally, he presented four other claims, including whether: the trial court erred in not evaluating each of the "other crimes" evidence independently; the evidence was sufficient to support his convictions for aiding and abetting or accessory before the fact; the evidence was sufficient to support convictions on the the handgun-related charges; and the trial court erred in not allowing him to present a witness at trial for rehabilitation purposes pursuant to the Maryland Rules of Procedure. (*Id*., Exhibit 10). The petition for writ of certiorari was denied by the Court of Appeals on September 12, 2002. (*Id*., Exhibit 11).

Petitioner then sought post-conviction relief, submitting several petitions arguing that counsel was ineffective in failing to:

(1) file a proper motion to suppress;

(2) preserve various defenses at trial;

(3) consult and keep Petitioner informed of the proceedings;

(4) subject the State's evidence to adversarial testing;

(5) interview and call to testify a material witness;

(6) inform Petitioner of a plea agreement offered by the State;

(7) offer properly relevant impeachment evidence;

(8) inform Petitioner of the state's intent to use "other crimes evidence;"

---

[2] The mandate issued on June 7, 2002.

(9)    investigate and offer relevant evidence;

(10)   request an instruction on lesser-included offenses;

(11)   advise Petitioner of the admissibility of the State's "other crimes evidence;"

Petitioner also argued that he was (12) prejudiced by the cumulative effect of counsel's errors; (13) the State committed misconduct by knowingly adducing perjured testimony and failing to disclose the "other crimes evidence" it intended to use against him at trial; and (14) the trial court erred by precluding him from calling a material impeachment witness. (*Id*., Exhibits 12-14).  The matter was heard on March 26, 2004, and the post-conviction court entered an ordered denying relief on April 6, 2004.  (*Id*., Exhibit 15; *see also* Paper No. 17, post-conviction hearing transcript).

Petitioner filed a timely application for leave to appeal the denying of post-conviction relief.  Although stating he sought review for "all of the issues that were raised at [his] hearing," he specifically sought review of three issues: whether the prosecution properly disclosed its intent to use "other crimes evidence;" whether trial counsel was ineffective for failing to investigate and present an alibi witness; and whether trial counsel was ineffective for failing to advise him properly with regard to the admission of the "other crimes evidence."  (Paper No. 11, Exhibit 16).  On January 12, 2005, the Court of Special Appeals of Maryland summarily denied the application for leave to appeal.  (*Id*., Exhibit 17).

In the instant petition, his first in federal court, Petitioner asserts that:

(1)    the State violated his due process rights by failing to comply with its discovery obligations;

(2)    the trial court improperly admitted "other crimes evidence;

(3)    the trial court denied him a right to present an impeachment witness and a rehabilitation witness;

(4)	trial counsel was ineffective in failing to ascertain and advise on the substance of the State's "other crimes evidence;"

(5)	trial counsel was ineffective for failing to relay the State's plea offer;

(6)	the trial court erred in denying his motion to sever the charges;

(7)	the evidence was insufficient to sustain convictions for handgun violations;

(8)	the post-conviction court erred in its ruling on the admission of "other crimes evidence:

(9)	the post-conviction court erred in its ruling on the alibi witness issue; and

(10)	the post-conviction court erred in its ruling on the *Brady*[3] violation issue.

(Paper No. 1).

## **Threshold Considerations**

### **Timeliness**

Respondents do not contend, and the Court does not find, that the Petition was filed outside the one-year limitations period set forth in 28 U.S.C. § 2244(d)(1).

### **Exhaustion of State Remedies**

Under *Rose v. Lundy*, 455 U.S. 509 (1982), before Petitioner may seek habeas relief in federal court, he must exhaust each claim presented to the federal court by pursuing remedies available in state court. This exhaustion requirement is satisfied by seeking review of the claim in the highest state court with jurisdiction to consider the claim. *See* 28 U.S.C. § 2254(b) and (c). In Maryland, this may be accomplished by proceeding with certain claims on direct appeal (and thereafter seeking *certiorari* to the Court of Appeals and with other claims by way of a post-conviction petition, followed by petitioning the Court of Special Appeals for leave to appeal.

---

[3] *Brady v. Maryland*, 373 U.S. 83 (1963).

Petitioner no longer has any state direct review or collateral review remedies available to him with respect to the claims raised in this Court. For this reason, his claims will be considered exhausted for the purpose of federal habeas corpus review.

**Procedural Default**

Respondents contend that Claim 1 concerning the State's alleged violation of discovery obligations, Claim 2 concerning trial court error regarding the admission of "other crimes evidence, Claim 3 concerning trial court error as to the right to call an impeachment witness and a rehabilitation witness, and Claim 10 concerning the post-conviction court's ruling on the *Brady* violation issue cannot be considered here because they were not fully presented in the state courts. This impediment to federal review of a petitioner's claims is known generally as the "procedural default doctrine." *See Harris v. Reed*, 489 U.S. 255 (1989); *Johnson v. Muncy*, 830 F.2d 508 (4th Cir. 1987). The procedural default doctrine ensures that "state courts have had the first opportunity to hear the claim sought to be vindicated in a federal habeas proceeding." *Picard v. Connor*, 404 U.S. 270, 276 (1971). In *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977), the Supreme Court held that consideration of a claim in a petition for habeas corpus can be barred by failure to comply with state procedural rules, unless the petitioner makes a showing of cause for the failure and prejudice resulting from the failure. In *Harris,* 489 at 267, the Court emphasized that a federal court has the responsibility to determine whether a state court in fact based its denial of relief on procedural grounds. In *Teague v. Lane*, 489 U.S. 288, 299 (1989), however, the Court determined that the rule announced in *Harris v. Reed* assumes that a state court has had the opportunity to address a claim that is later raised in a federal habeas proceeding. *See id.* at 299. Thus, claims which have never been presented in the state courts--or claims which were not exhausted properly in the state courts--

are procedurally defaulted if presentation of the claims in state court would be barred by state procedural rules. *See Johnson v. Maryland*, 915 F.2d 892, 895 (4th Cir. 1990).

The Court concurs with Respondents. Claim 1 was raised at post-conviction but was not specifically raised as an issue in the application for leave to appeal.[4] (Paper No. 11, Exhibits 12-16). Claim 2 also is defaulted because Petitioner never asserted in the State courts that the admission of "other crimes evidence" violated his right to due process. In any event, the admission of "other crimes evidence" is governed by Maryland Rule 5-404(b). It is not the province of a federal habeas court to re-examine state court determinations on state law questions. *See* 28 U.S.C. § *2254(a)* (ground raised in federal habeas petition must be based on violation of the Constitution or laws or treaties of the United States); *see also Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Spencer v. Murray*, 18 F.3d 237, 239-40 (4th Cir. 1994) (where petitioner complains about admissibility of evidence without citing any constitutional provision or any constitutional right that was infringed, federal claim was not stated). Claim 3 alleges the trial court erred in precluding Petitioner from presenting "an impeachment witness" and from recalling "a rehabilitation witness." The trial court barred defense witness Carlton Robinson from being recalled to the stand. (Paper No. 11, Exhibits 4, 12-15). Petitioner did not raise this claim of trial court error on direct appeals. (*Id*., Exhibit 7). At post-conviction, Petitioner asserted trial court error in excluding Robinson as an impeachment witness, but did not discuss Robinson's exclusion as a rehabilitation witness. (*Id*., Exhibits 12-14). Trial court error with regard to Robinson's exclusion was not addressed specifically in Petitioner's

---

[4] Under Maryland Rule 8-204, an application for leave to appeal may be denied when unaccompanied by a "concise statement of the reasons why the judgment should be reversed or modified." *See State v. Hernandez*, 344 Md. 721, 728, 690 A.2d 526, 530 (1977) (*quoting Hernandez v. State*, 108 Md. App. 354, 364, 367 A.2d 103, 108 (1996). In any event, Claim 1 relies on a State evidentiary rule and is not cognizable in this forum. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).

application for leave to appeal the denial of post-conviction relief. (*Id*., Exhibit 16). This claim is therefore deemed defaulted. Claim 10, alleging a violation of *Brady v. Maryland*, was not raised on direct appeal and also is subject to the procedural default doctrine.

These findings, however do not end the analysis, because this Court may consider procedurally defaulted claims on the merits if petitioner shows either (1) cause for the procedural default and actual prejudice arising out of the violation of federal law, *see Wainwright,* 433 U.S. at 87, or (2) a resulting fundamental miscarriage of justice if the federal court does not consider the claims. *See Gray v. Netherland*, 518 U.S. 152, 160 (1996); *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

Petitioner has failed to establish any legally sufficient basis showing cause and prejudice for procedural default. Nonetheless, this Court must still consider whether it should reach the merits of his claims in order to prevent a fundamental miscarriage of justice. *See Schlup v. Delo*, 513 U.S. 298, 299 (1995). The miscarriage of justice standard is directly linked to innocence. *Id.* at 320. Innocence is not an independent claim; rather, it is the "gateway" through which a petitioner must pass before a court may consider constitutional claims which are defaulted. *Id*. at 320. The miscarriage of justice exception applies where a petitioner shows that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S. 478, 496 (1986); *Schlup*, 513 U.S. at 320. To meet this standard Petitioner must show it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt. *Id*. *Schlup* observes that:

> a substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare . . . To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence--whether it be exculpatory scientific evidence, trustworthy eyewitness

accounts, or critical physical evidence--that was not presented at trial**.** *Id.* at 865.

Petitioner has failed to present such evidence, and review of the record does not suggest that it exists.[5] Petitioner has failed to overcome the procedural bar, and Claims 1, 2, 3 and 10 are procedurally defaulted and therefore foreclosed from federal habeas review.[6]

### Standard of Review

Because this Petition was filed after April 24, 1996, it is to be decided under amendments to the habeas corpus statutes contained in the Antiterrorism and Effective Death Penalty Act ("AEDPA"). *See Woodford v. Garceau*, 538 U.S. 202, 207 (2003); *Beck v. Angelone*, 261 F.3d 377, 380 n.3 (4th Cir. 2001). AEDPA modified the federal court's role in habeas proceedings in order to prevent federal "retrials" and to ensure that state court convictions are given effect to the extent possible under law. *See Bell v. Cone*, 535 U.S. 685, 693 (2002). Pursuant to statute, a federal court may not grant a writ of habeas corpus unless the state's adjudication on the merits:

> 1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or
>
> 2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A decision is "contrary to" Supreme Court precedent if "the state court applies a rule that

---

[5] Testimony by John Sharpe, co-defendant Hackney's cell mate, was not, as petitioner claims, exculpatory. Sharpe testified that Hackney told him that Hackney shot one of the victims, while his unnamed friend, whom he had known most of his life, shot the other victim in the back as the victim ran. *See* Paper No. 12, Exhibit 4 at 29-30.

[6] In any event, the post-conviction court's rulings concerning "other crimes" evidence appear reasonable and would be upheld here pursuant to 28 U.S.C. §2254(d).

contradicts the governing law set forth in our cases." *Williams v. Taylor*, 529 U.S. 362, 405 (2000).[7] Section 2254(d) also requires federal courts to give great deference to a state court's factual findings. *See Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000). Section 2254(e)(1) provides that a determination of a factual issue made by a state court shall be presumed to be correct absent clear and convincing evidence to the contrary. Petitioner has the burden of rebutting the presumption of correctness. A decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceeding. *See Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

## Analysis of Petitioner's Undefaulted Claims

### Ineffective Assistance of Trial Counsel

To establish a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668 (1984), a convicted defendant must demonstrate that counsel's performance (1) "fell below an objective standard of reasonableness," and (2) that counsel's deficient performance prejudiced the defendant. *Id*. at 688, 692. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id*. at 686. The ultimate focus of the

---

[7] Although § 2254(d) is a "highly deferential standard for evaluating state-court rulings," *Lindh v. Murphy*, 521 U.S. 320, 333, n.7 (1997), "which demands that state court decisions be given the benefit of the doubt," *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (*per curiam*), a state court decision is "contrary to" clearly established federal law when "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor,* 529 at 412-413. A state court decision is based on an "unreasonable application" of clearly established federal law when "the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*. "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id*. at 409-410; *see also Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003); *Booth-el v. Nuth*, 288 F.3d 571, 575 (4th Cir. 2002).

*Strickland* inquiry is on the "fundamental fairness of the proceeding whose result is being challenged." *Id*. at 696.

In evaluating whether counsel's performance fell below an objective standard of reasonableness, a court must consider "whether counsel's assistance was reasonable considering all the circumstances." *Id*. at 688. In its analysis, a court must be "highly deferential," and "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, a defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id*. at 689 (internal quotations omitted). A court must not use the benefit of hindsight to second-guess strategic decisions made by counsel unless they were unreasonable. *See id*. at 690.

With regard to the prejudice prong of *Strickland*, a defendant need not demonstrate that the outcome of the proceeding would have been different, but rather that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Even if counsel committed a professionally unreasonable error, relief can be granted only if "counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair." *See Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993).

In Claims 4 and 5, Petitioner contends that trial counsel failed to ascertain and advise him on the substance of the State's "other crimes" evidence and also failed to relay the State's plea offer. These grounds are as intertwined as the two robberies for which Petitioner was convicted.

The first robbery, on September 5, 2000, occurred at a pay phone next to a Beverage Barn

-10-

in Salisbury, Maryland. The victim, Jacob Weiland, was using an outdoor payphone around 11:10

p.m. when Kevin Moses approached him and demanded money. When Weiland said he didn't have anything, Moses shot him and walked away. The second robbery, on September 7, 2000, occurred at a High's Dairy Market in Salisbury, Maryland around 10:35 p.m. Moses walked into the store wearing a stocking cap and pointed a handgun at the cashier, demanding money from the safe. He fired the gun into the ceiling and took money from the cash register. He was recognized by a witness in the store who knew him from her neighborhood.

Petitioner made a pretrial statement admitting he was driving the car on each occasion and claiming that he did not know that Moses planned to rob either Weiland or the High's Store. Moses testified against Petitioner at trial, as did Weiland and those present at the High's Store. Additionally, the State presented witnesses at trial regarding Moses's attempt to rob an employee at the kiosk in the Salisbury Mall and another store, the Shore Stop, implicating Petitioner as the driver in each case. As noted by the post-conviction court, contents of the court file established that trial counsel was informed of the State's intention to use the testimony of Moses and/or Anthony Badget to implicate Petitioner in a conspiracy to commit armed robbery. By early February, 2001, the State had reached a plea agreement for Moses's testimony at Petitioner's trial; several months earlier, well in advance of trial, the identity of witness Mel Snyder and the description of the incident at Tape World was disclosed to counsel through discovery. The State also gave early disclosure of the names of witnesses to the Shore Stop robbery and a summary of testimony by Crystal Blades, who admitted she never saw Petitioner during the Shore Stop incident. (Paper No. 11, Exhibit 15 at 7-10).

The "other crimes" evidence offered by the State consisted of additional planned

-11-

robberies of an employee at the kiosk at the mall and of Tape World, as well as an attempted

robbery at the Shore Stop, each occurring near the two armed robberies for which Petitioner was charged as an accessory and conspirator. As noted by the post-conviction court,

> [Petitioner] admitted in his testimony that he and his counsel discussed the State's intention to use the Tape World and Shore Stop incidents against him at trial....Petitioner recalled that the conversation occurred approximately five days before trial. There was no failure by counsel to inform...Petitioner of this evidence.
>
> It was counsel's legal opinion that the Court would exclude evidence of other crimes as unduly prejudicial, and not relevant to the charges before the jury. [Trial counsel] credibly testified that he advised the client of his opinion, without guaranteeing a particular ruling by the court. At trial, counsel objected to the other crimes evidence, articulating the basis for his objection and preserving the issue for appeal. The Court overruled the objection after applying the proper legal criterion, and balancing the prejudice to [Petitioner] against the probative value of the evidence. The ruling was a discretionary one with the Court. [Trial counsel] testified at the post-conviction hearing that he still disagreed with the trial court's ruling on this issue.

The post-conviction court, having set forth the standard of review under *Strickland*, then noted that:

> [i]n order to establish the "deficiency" prong...Petitioner must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. Here counsel understood the law, advised the client of his opinion on the admissibility of the evidence, and protected the record for the sake of appeal. The fact that the Court, in exercising its discretion, disagreed with trial counsel, does not establish ineffective assistance of counsel. The court is not convinced that...Petitioner was induced into going to trial th[r]ough any deficiency by trial counsel, nor that trial counsel guaranteed that no "other crimes" evidence could be admitted at trial. Finally, given the plea bargains offered by the defense in this case, and the absence of any agreement as to sentencing in the State's offers, the Court is not persuaded that... Petitioner would have accepted the State's offer if he knew the "other crimes" evidence would be received into evidence.

Petitioner's second ineffective assistance of counsel claim rests on his allegation that

-12-

counsel failed to inform Petitioner of a plea agreement offered by the State, which prevented him from making a knowing and intelligent decision whether to proceed to trial. Petitioner claimed at

the post-conviction hearing that at some point the State offered a plea which would not require him to testify against his co-conspirators. The post-conviction court set forth the Maryland rule concerning discussion of plea agreements and proposals with clients, and found as follows:

> ...[Trial counsel] testified that he relayed the State's first plea offer to Petitioner during a jail visit on December 18, 2000. Among its terms, the plea required Petitioner to testify against a co-defendant. Petitioner rejected the State's offer and made a counter-offer. Although counsel told Petitioner he believed the counter-offer was unrealistic, he promised to relay it to the State.
>
> Counsel called the State with Petitioner's counter-offer on January 17, 2001. The State firmly rejected the counter-offer and said the State's plea offer remained the same. Counsel relayed this information to Petitioner on the same day. Petitioner made another counter-offer. Counsel forwarded this second counter-offer to the State, which was promptly rejected on January 18, 2001.
>
> During direct examination of counsel at the post-conviction hearing, counsel stated that he didn't recall Petitioner ever stating that he wanted to take the State's plea offer. On cross-examination counsel stated that testifying was always a condition of the State's plea offer. The State does not contradict this fact. The Court credits counsel's testimony that he relayed both offers and counter-offers, and that at no time did Petitioner indicate he wanted to take the plea the State had offered, and that testimony by Petitioner against one or both co-defendants was always a requirement of the State's plea offer.

(*Id.*, Exhibit 15 at 12-13).

The post-conviction court's findings of fact are presumed to be correct and are supported by the record. The state court did not unreasonably apply *Strickland* to those facts, and this Court will uphold the determination that trial counsel did not render ineffective assistance.

-13-

**Severance**

Petitioner next alleges that the trial court erred in denying his motion to sever the robbery

charges. The Court of Special Appeals examined whether the trial court erred in denying Petitioner's motion to sever the robbery charges and rejected it on the merits, finding that the trial court did not abuse its discretion under Maryland law, given that Petitioner was charged with conspiracy to "commit a series of 'capers'" with Moses and others. (Paper No. 11, Exhibit 9 at 4-9). The question of severance clearly implicates state law and will be reversed here only if the refusal to sever deprived Petitioner of a fair trial and resulted in a miscarriage of justice. *See Person v. Miller*, 854 F.2d 656 (4th Cir. 1988). Petitioner has not met his burden of showing such prejudice here. *See United States v. Clark*, 928 F.2d 639, 645 (4th Cir. 1991).

### Sufficiency of the Evidence

Petitioner contends that the evidence was insufficient to sustain his handgun conviction, given that he did not possess the firearm used during the commission of the crimes. The Court of Special Appeals of Maryland rejected this claim under state law, which permits the conviction to stand under certain circumstances even where the convicted individual did not actually hold the gun. (Paper No. 11, Exhibit 9 at 11-15). As noted by the appellate court, the standard to be applied is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. (*Id.*, Exhibit 9 at 11; *see also Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). The evidence clearly supports the conviction under Maryland law and does not run afoul of *Jackson*; accordingly, Petitioner is not entitled to relief on this ground.

### Erroneous Post-Conviction Rulings

Petitioner contends that the post-conviction court erred in its rulings regarding the admission

of other crimes evidence and trial counsels' failure to investigate an alibi witness. Claims of error occurring during post-conviction proceedings generally cannot serve as a basis for habeas corpus relief. *See* 28 U.S.C. § 2254(a) (ground may be reviewed on behalf of one in custody pursuant to a State court judgment only on ground that such custody violates the Constitution or laws or treaties of the United States); *Mackall v. Angelone*, 131 F.3d 442, 447-48 (4th Cir. 1997) (post-conviction relief is not part of criminal proceeding itself and is not constitutionally required); *Bryant v. Maryland*, 848 F.2d 492, 493 (4th Cir. 1988) (claims of error in state post-conviction proceedings cannot serve as basis for habeas relief). In any event, the introduction of "other crimes" evidence has been fully explored supra, and the post-conviction court examined the allegation that counsel failed to call at trial an alibi witness and found that the witness (a college instructor) could not provide an alibi, because Petitioner was not scheduled to be in class at the time the Tape World incident occurred. (Paper No. 11, Exhibit 15 at 11-12). Nothing more is constitutionally required

Petitioner is not entitled to relief on the basis of his claim. *See* 28 U.S.C. 2254(d)(1996). Accordingly, the instant petition for habeas corpus relief will be denied, and this case will be dismissed by separate order.

<u>August 17, 2006</u>                                         <u>         /s/         </u>
(Date)                                                           Alexander Williams, Jr.
                                                                 United States District Judge